## WILLIAM EMMOTT v. THE SLATER MUTUAL FIRE INSURANCE COMPANY.

One of the by-laws of a mutual fire insurance company, annexed to and made a part of its policies, provided, amongst other things, that it should "be optional with the company to terminate the insurance after seven days notice given to the insured, or his representative, of their intention to do so," in which case, they were to refund a ratable portion of the premium. In winding up the affairs of the company, under a company vote to that effect, the directors and their committee ordered, that the class of policies which included the plaintiff's should be cancelled on the 15th February," or as soon after the date named as shall be found practicable, allowing for due notice to all parties, and reasonable time to procure new insurance." On the evening of the 13th February, but after the closing of the post-office, a notice, directed to the plaintiff, was deposited in the post-office, informing him that all policies of the class of his would be cancelled

Emmott *v.* The Slater Mutual Fire Insurance Co.

on the 20th February, and that from and after that date no member of the class would be held insured or liable to assessment. The plaintiff received this notice on the 14th February, and on the 22d February, his property covered by the policy was destroyed by fire; *Held,* in a suit by him upon the policy, that . he could not recover this loss, inasmuch as at the time of the loss his policy had been cancelled, and he had, within the letter and spirit of the by-law, received seven days notice of the intent of the company to cancel his policy on a day subsequent to the giving of the notice.

Assumpsit upon a policy of insurance issued by the defendants,—a mutual fire insurance company,—insuring the plaintiff as a member of said company,—subject to the conditions and limitations of the charter and by-laws of the company annexed,— in the sum of one thousand dollars, on his machinery and stock, contained in the third story of a building situated on the corner of Smith and Charles streets, in Providence.

The case was submitted to the court, without a jury, under the general issue, when it appeared, that the 13th article of the by-laws of the company, made a part of the policy, was as follows :—

"Article 13. *Cancelling policies.* When buildings or other property insured shall be alienated by sale or otherwise, the insured may surrender his policy and receive back his deposit note, if no unpaid assessment is due thereon, and the directors may order returned such portions of the previously paid premiums as shall seem equitably due ;. *and if from any cause the company shall so elect, it shall be optional with the company to terminate the insurance after seven days notice given to the insured or his representative, of their intention to do so, in which case they shall refund a ratable portion of the premium.*"

On the 9th day of January, 1863, at a corporation meeting, duly held, it was resolved, as follows :—

"*Resolved,* That the board of directors be, and they are hereby, directed to proceed at once to take the necessary steps, to close the risks, pay the debts, and wind up the affairs of the company, in such manner as they shall find to be lawful and just to all parties concerned."

Pursuant to this vote, the board of directors appointed a com-

mittee, consisting of the president and two others, with full power to carry the vote of the company into effect, who adopted a plan for the purpose, proposed by the president, and which he was authorized and directed to carry out, the first section of which was,—

" 1st. To cancel all the policies, crediting unearned premiums to the holders; the cancellation to take effect as follows : in the manufacturers' class, February 1st; general class, February 15th; dwelling-house class, March 1st, 1863 ;—or as soon after the dates named as shall be found practicable, allowing for due notice to all parties, and reasonable time for procuring new insurance."

On the evening of 13th February, 1863, but after the post-office had closed, the president of the company placed in the post-office of Providence, directed to the plaintiff, a notice of the cancellation of his policy, together with like notices to all others of his class, of which the following is a copy, which the plaintiff received on the morning of the 14th February, 1863 :—

"OFFICE OF THE SLATER MUTUAL FIRE INS. CO.,  
No. 33 Westminster Street.  
PROVIDENCE, Feb. 6, 1863.

" To WM. EMMOTT, Providence, R. I. :—

" Notice is hereby given, that all policies in the general class* of this company will be cancelled on the 20th day of the present month at noon ; consequently, from and after that date, no member of said class will be held insured, or liable to assessment for any after loss therein. All unearned premiums on said policies will be credited to the holders, and allowed in closing the affairs of the company. This cancellation is made under a power for that purpose reserved in the by-laws, and in pursuance of a vote of the company to close the business. Please fill out and sign the subjoined receipt and return it to this office.

(Signed,) " CALEB FARNUM, *President.*"

The plaintiff's policy fell within the general class to which the

---

* " The general class includes all policies except those marked 'manufacturers' class' or 'dwelling-house department.'"

notice given to him applied. The property insured by his policy was destroyed by fire on the 22d day of February, 1863.

The question submitted was, whether the notice was sufficient under the by-law, seven days notice prior to the period fixed therein for cancellation not having been given, though seven days notice was given prior to the loss?

*B. N. Lapham, for the plaintiff.*

*Thurston, for the defendant.*

· AMES, C. J. The plan adopted by the directors and their committee for winding up the affairs of this company, in pursuance of the corporate vote, was, to cancel the general class of policies, of which the plaintiff's was one, on the 15th day of February, 1863, " or as soon after the date named as shall be found practicable, allowing for due notice to all parties and reasonable time to procure new insurance." In other words, the cancellation of this class of policies was to take place as soon after the day named as the seven days notice of the intent to cancel, required by the by-law, had been given. The cancellation was thus made prospective, and dependent, as it must be, to bind the policy-holder, for the day upon which it took effect, upon his receipt of notice.

The notice received by the plaintiff on the 14th day of February, informed him, in substance, that from and *after* the 20th of that month, " no member of his class would be held insured," as the policy would be cancelled at noon on that day, under the power reserved by the by-law, and in pursuance of the vote of the company. The purpose of the by-law, in requiring seven days notice of the intent to cancel his policy, to be given to a member before the cancellation would become effectual, was, to give him seasonable warning, if he would be protected by insurance, to get it elsewhere. This purpose seems to us to have been as fully answered by the notice given to the plaintiff, as if the 21st day of February, instead of the 20th, had been inserted in the notice as the day from and *after* which his policy would stand cancelled. By warning him to procure other insurance earlier than the by-law, considering the time he received the notice, permitted, it could not mislead him to his injury; and when the seven days had expired after his receipt of the notice,

he had all the notice which the by-law, either in its letter or spirit, required; that is, seven days notice of the intent of the company to cancel his policy on a day subsequent to the giving of the notice.

As the loss happened after the plaintiff had received the seven days notice of the intent to cancel his policy, we hold that his policy was then cancelled, and order judgment to be entered up for the defendants, with costs.